M. REED HOPPER, Cal. Bar No. 131291*
E-mail:  mrh@pacificlegal.org
TIMOTHY SANDEFUR, Cal. Bar No. 224436*
E-mail:  tms@pacificlegal.org
DANIEL A. HIMEBAUGH, Wash. Bar No. 41711*
E-mail:  dah@pacificlegal.org
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone:  (916) 419-7111
Facsimile:  (916) 419-7747
*pro hac vice

Attorneys for Plaintiffs MICHAEL MUNIE
and ABC QUALITY MOVING, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| MICHAEL MUNIE, an individual, and ABC QUALITY MOVING, LLC, a Missouri Corporation, | No. 4:10-cv-01096-AGF |
| Plaintiffs, | **PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| JAN SKOUBY, in her official capacity as Director of the Missouri Department of Transportation Motor Carrier Services Division; et al., | Judge:   The Hon. Audrey G. Fleissig |
| | Trial Date:   May 14, 2012 |
| Defendants. | |

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................... iii

INTRODUCTION AND STATEMENT OF THE CASE ........................... 1

ARGUMENT .................................................................. 2

I. STANDARD OF REVIEW ................................................ 2

II. THE RATIONAL BASIS STANDARD AND NAKED PROTECTIONISM ........ 3

III. THE PLAINTIFFS' MOVING BUSINESS ................................. 4

IV. THE UNCONTROVERTED FACTS SHOW THAT THE COMPETITOR'S VETO PROCEDURE RESTRICTS MUNIE'S CONSTITUTIONALLY PROTECTED LIBERTY FOR NO LEGITIMATE PUBLIC REASON ............. 5

   A. Munie Has a Constitutional Right to Earn a Living Free of Restrictions That Bear No Rational Relationship to a Legitimate Public Interest ............ 5

   B. The Competitor's Veto Procedure ................................... 6

   C. How the Competitor's Veto Procedure Works in Practice ................. 7

   D. Examples of Competitor's Vetoes ................................... 8

V. THE COMPETITOR'S VETO PROCEDURE DOES NOT RATIONALLY RELATE TO A LEGITIMATE GOVERNMENT INTEREST, BUT MERELY PROTECTS ESTABLISHED MOVING FIRMS AGAINST LEGITIMATE COMPETITION, THUS VIOLATING THE DUE PROCESS AND EQUAL PROTECTION CLAUSES ..... 12

   A. The Competitor's Veto Procedure Serves No Public Health, Safety, or Welfare Purpose ........................... 12

   B. The Challenged Statutes and Regulations Are Not Rationally Related to Any Other Legitimate Government Interest ...................... 14

   C. The Competitor's Veto Procedure Violates the Equal Protection Clause by Protecting the Private Interests of Existing Companies Against Legitimate Competition and Arbitrarily Restricting Moving Companies but Not Similarly Situated Firms ............. 16

VI. THE "USEFUL PUBLIC PURPOSE" AND "PUBLIC CONVENIENCE AND NECESSITY" STANDARDS IN SECTION 390.051 ARE UNCONSTITUTIONALLY VAGUE .................. 19

   A. "Useful Present or Future Public Purpose" ............................ 19

   B. "Public Convenience and Necessity" ................................ 22

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747



1

                                                                                              **Page**

2   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

3   CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*2302 N. Truman Entm't Mgmt., LLC v. City of Pevely,*
No. 4:11CV171, 2011 U.S. Dist. LEXIS 138700 (E.D. Mo. Dec. 2, 2011) . . . . . . . . . . . 19

*Brown v. Barry*, 710 F. Supp. 352 (D.D.C. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Buck v. Kuykendall*, 267 U.S. 307 (1925) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3

*Craigmiles v. Giles*, 312 F.3d 220 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . 2-5, 12, 16

*Gallagher v. City of Clayton*, No. 4:11-CV-392,
2011 U.S. Dist. LEXIS 141828 (E.D. Mo. Dec. 9, 2011) . . . . . . . . . . . . . . . . . . . . . . . . 20

*Geiger v. City of Eagan*, 618 F.2d 26 (8th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

*Hawkeye Commodity Promotions, Inc. v. Vilsack*, 486 F.3d 430 (8th Cir. 2007) . . . . . . . . 4

*Int'l Soc'y for Krishna Consciousness, Inc. v. Engelhardt,*
425 F. Supp. 176 (W.D. Mo. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Jenkins v. Palmer*, 62 F.3d 1083 (8th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Kwoun v. Se. Mo. Prof'l Standards Review Org.*, 622 F. Supp. 520 (E.D. Mo. 1985) . . . . . . 5

*Magnani v. City of Ames, Iowa*, 493 F. Supp. 1003 (S.D. Iowa 1980) . . . . . . . . . . . . . . . . 20

*Mathews v. Lucas*, 427 U.S. 495 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) . . . . . . . . . . . 3

*Merrifield v. Lockyer*, 547 F.3d 978 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . 2-5, 16

*New State Ice Co. v. Liebmann*, 285 U.S. 262 (1932) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Ovid Bell Press, Inc. v. Dir. of Revenue*, 45 S.W.3d 880 (Mo. 2001) . . . . . . . . . . . . . . . . . 23

*Powers v. Harris*, 379 F.3d 1208 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Prostrollo v. Univ. of South Dakota*, 507 F.2d 775 (8th Cir. 1974) . . . . . . . . . . . . . . . . . . 14

*Schweiker v. Wilson*, 450 U.S. 221 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Stanley v. Pub. Utils. Comm'n*, 295 U.S. 76 (1935) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*State ex rel. Holland Indus., Inc. v. Div. of Transp.,*
762 S.W.2d 48 (Mo. Ct. App. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

Page

*State ex rel. Intercon Gas, Inc. v. Pub. Serv. Comm'n,*
    848 S.W.2d 593 (Mo. Ct. App. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*State ex rel. Ozark Elec. Coop. v. Pub. Serv. Comm'n,*
    527 S.W.2d 390 (Mo. Ct. App. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*State ex rel. Potashnick Truck Serv., Inc. v. Pub. Serv. Comm'n,*
    129 S.W.2d 69 (Mo. Ct. App. 1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528 (1973) . . . . . . . . . . . . . . . . . . . . . . . . 3

*Yick Wo v. Hopkins*, 118 U.S. 356 (1886) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22, 23

**Missouri Statutes**

Mo. Rev. Stat. § 304.190(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    § 390.011 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    § 390.030.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    § 390.030.1(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    § 390.030(1)(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 17

    § 390.030(1)(10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 17

    § 390.051 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 17, 19-20, 23-24

    § 390.051(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6-7, 19

    § 390.051(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2, 6-7, 16

    § 390.062(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6-7

    § 390.062(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Missouri Regulations**

Mo. Code Regs. tit. 1, § 15-3.250(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Mo. Code Regs. tit. 7, § 265-10.015 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 24

    § 265-10.015(7)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

**Rule of Court**

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

| | Page |
|---|---:|

**Miscellaneous**

Gardner, Paul H., Jr., *Entry and Rate Regulation of Interstate Motor
    Carriers in Missouri:  A Strategy for Reform*, 47 Mo. L. Rev. 693 (1982) . . . . . . . . . . . .   18

*Merriam-Webster's Collegiate Dictionary* (10th ed. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA  95814
(916) 419-7111 FAX (916) 419-7747

**INTRODUCTION AND STATEMENT OF THE CASE**

This lawsuit seeks to vindicate the constitutional right of Plaintiffs Michael Munie and ABC Quality Moving[1] to earn a living at a lawful trade as household goods movers in Missouri without being subject to an arbitrary and irrational licensing law which gives existing moving companies the privilege of essentially blocking potential competitors from obtaining licenses to operate.

The statute challenged here—Mo. Rev. Stat. § 390.051(4)-(5) and its implementing regulations—establishes a three-step process for granting the legally required Certificate to operate a moving company. Mo. Rev. Stat. § 390.051(4); Plaintiffs' Statement of Uncontroverted Facts in Support of Summary Judgment (SUF) ¶ 11.

When a person files an application for a Certificate, the Missouri Department of Transportation Motor Carrier Services Division (Defendants or Division) must *first* review the application to ensure that the applicant is "fit, willing and able to properly perform the service proposed"—that is, that the proposed service complies with public health, safety, and welfare considerations. SUF ¶ 12. Munie does not challenge this requirement.

The *second* and *third* steps, however, establish an arbitrary, irrational, and unconstitutional "Competitor's Veto" that bars entrepreneurs like Munie from entering the moving business, not for any public purpose, but solely to serve the private, anticompetitive purposes of established moving companies. Under the *second* step, the Division determines, according to incomprehensible and subjective criteria, whether the proposed company would "serve a useful present or future public purpose." Mo. Rev. Stat. § 390.051(4); SUF ¶¶ 11, 13. No statute, regulation, case law, handbook, or other guideline exists to define these terms or limit official discretion when implementing them. SUF ¶¶ 14-15.

The *third* step requires the Division to notify existing moving companies of the application, and give them the opportunity to object to the issuance of a new Certificate. Mo. Rev. Stat. § 390.051(4); Mo. Rev. Stat. § 390.062(1)-(2); Mo. Code Regs. tit. 7, § 265-10.015; SUF ¶ 28-29.

---

[1] Plaintiffs are hereafter collectively referred to as "Munie" unless otherwise specified.

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

When an objection—called an "Intervention"—is filed, the Division refers the matter to the Administrative Hearing Commission (AHC) to hold a hearing to determine whether to grant the Certificate. SUF ¶¶ 32-34. At that hearing, the Certificate can be refused for the sole reason that issuing a license would cause competition against the existing firms. *See* Mo. Rev. Stat. § 390.051(5) ("In cases where persons object to the issuance of a certificate, the diversion of revenue or traffic from existing carriers shall be considered."); SUF ¶ 42. Indeed, in the only contested case to proceed through a hearing since 2005—*In re D. Gaines, Inc.* (No. 05-0227 MC) (attached as Exhibit 177 to the Declaration of Timothy Sandefur in Support of Plaintiffs' Motion for Summary Judgment (Sandefur Dec.))—the applicant was found to be fully qualified and in compliance with the insurance requirements, but was still denied a Certificate for the sole reason that allowing him to provide moving services statewide would cause "diversion of traffic or revenue" from existing moving companies. SUF ¶¶ 51-52.

Munie contends this "Competitor's Veto" Procedure deprives him of his constitutionally protected freedom to labor in a common occupation, and bears no rational relationship to a legitimate government interest. The only purpose or effect of this Procedure is to preserve the market share of existing moving companies against potential competition by new entrants like Munie. This "naked attempt to raise a fortress protecting the monopoly rents that [established moving companies] extract from consumers" violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment. *Craigmiles v. Giles*, 312 F.3d 220, 229 (6th Cir. 2002); *accord*, *Merrifield v. Lockyer*, 547 F.3d 978, 991-92 (9th Cir. 2008).

**ARGUMENT**

**I**

**STANDARD OF REVIEW**

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-34 (1986). To prevail, Munie must demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1  burden then shifts to the nonmoving party to show that there is a genuine factual dispute for trial.

2  *Id.* The nonmoving party "must do more than simply show that there is some metaphysical doubt

3  as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586

4  (1986), but must identify specific facts in evidentiary materials revealing a genuine issue for trial.

5  *Celotex*, 477 U.S. at 323. The issue here—whether the Competitor's Veto Procedure is

6  constitutional—is appropriate for summary judgment.

**II**

**THE RATIONAL BASIS STANDARD
AND NAKED PROTECTIONISM**

10  When a law regulating economic activities is challenged under the Fourteenth Amendment,

11  courts employ the rational basis test, under which laws must be rationally related to a legitimate

12  state interest. *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534-36 (1973); *Craigmiles*, 312 F.3d

13  at 224; *Merrifield*, 547 F.3d at 991-92. While the rational basis test is lenient, it is not "toothless,"

14  *Mathews v. Lucas*, 427 U.S. 495, 510 (1976), a challenged law must "rationally [advance] a

15  reasonable and identifiable governmental objective." *Schweiker v. Wilson*, 450 U.S. 221, 235

16  (1981). *Cf. Jenkins v. Palmer*, 62 F.3d 1083, 1088 (8th Cir. 1995) (rational basis violated where

17  law "bore no reasonable relationship to the purpose of the Act"). A law will pass the rational basis

18  test if it genuinely relates to a legitimate state goal, but will fail that test if it exists for the sole

19  purpose of protecting the private interests of established businesses against legitimate competition.

20  *Craigmiles*, 312 F.3d at 226; *Merrifield*, 547 F.3d at 991-92.[2]

21  There appear to be no Eighth Circuit cases addressing the constitutionality of a licensing

22  restriction like that challenged here. But *Craigmiles* and *Merrifield* are markedly similar to the

23  case at bar, and provide a roadmap for deciding this case. There, courts first examined

24  occupational licensing requirements to determine whether they were rationally related to the state's

25  legitimate interest in protecting public health, safety, or welfare. Second, when they found that the

---

26  
27  [2] *Contra*, *Powers v. Harris*, 379 F.3d 1208, 1218-19 (10th Cir. 2004) (concluding that protecting an established economic interest group against competition is a legitimate government interest). Plaintiffs urge this Court to reject the analysis in *Powers*, for the reasons articulated in *Merrifield*,
28  547 F.3d at 991 n.15.

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1    requirements bore no realistic connection to such legitimate interests, those courts proceeded to

2    determine whether, instead, the licensing restrictions served only the private interests of established

3    firms against potential new entrepreneurs. *See Craigmiles*, 312 F.3d at 224-28 ("Finding no

4    rational relationship to any of the articulated purposes of the state, we are left with [its] more

5    obvious illegitimate purpose," namely "protecting a discrete interest group from economic

6    competition."); *Merrifield*, 547 F.3d at 991 (finding that "there is not a legitimate interest

7    implicated by" the licensing requirement, but the requirement "was designed to favor economically

8    certain constituents at the expense of others similarly situated" and was therefore unconstitutional).

9    Thus, to prevail, Munie must show that he is (1) legally deprived of a protected liberty

10   interest unless he undergoes the Competitor's Veto Procedure; (2) that any relationship between

11   the Competitor's Veto Procedure and public health, safety, morals, or general welfare is "so

12   attenuated as to render [it] arbitrary or irrational," *Hawkeye Commodity Promotions, Inc. v. Vilsack*,

13   486 F.3d 430, 442 (8th Cir. 2007); and (3) that the challenged law merely protects established firms

14   against legitimate competition. *Craigmiles*, 312 F.3d at 228; *Merrifield*, 547 F.3d at 991. None

15   of the facts here are contested. The undisputed evidence overwhelmingly supports the conclusion

16   that the Competitor's Veto Procedure lacks any rational relationship to a legitimate government

17   interest, and that it only serves the unconstitutional purpose of limiting Munie's liberty so as to

18   prevent legitimate competition. Thus, Munie is entitled to summary judgment.

19                                       **III**

20                      **THE PLAINTIFFS' MOVING BUSINESS**

21   Michael Munie is a qualified, experienced, and reputable mover, whose successful 22-year-

22   old moving company, ABC Quality Moving, LLC, employs between 15 and 20 people, and has

23   helped move thousands of customers in the St. Louis area. SUF ¶ 1. He holds a federal license

24   allowing him to operate across state lines, and a state license allowing him to operate within

25   St. Louis. SUF ¶ 3. But he is not authorized to operate outside the St. Louis Commercial Zone,[3]

26   

27   [3] Commercial Zone is defined in Mo. Rev. Stat. § 304.190(3). The St. Louis Commercial Zone

28   consists of the counties of St. Louis and St. Charles, as well as the territory 18 miles beyond the
     City limits. SUF ¶ 72.

and if he were to seek such authority, he would be required to undergo the unconstitutional Competitor's Veto Procedure.  SUF ¶¶ 5, 97.

In fact, in 2009, Mr. Munie did seek authority to operate within a 125-mile radius of St. Louis, and his application was subjected to four Interventions by existing firms, whose only basis for intervention was that Munie's proposed service would cause "diversion of traffic" from them—*i.e.*, competition with them.  SUF ¶¶ 89-90.  The Intervenors made no allegation that his proposed service was a danger to public health, safety, or welfare, or in any way inimical to the public interest.  SUF ¶ 91.  Nevertheless, Defendants referred Munie's application to the AHC for a hearing.  SUF ¶ 92.  Going through the hearing process would have cost Munie and ABC Quality Moving a substantial amount of money for legal representation, delayed the issuing of a Certificate, and likely would have resulted in a denial.  SUF ¶¶ 43, 93-94.  On the advice of his counsel, Munie chose to avoid these costs, delays, and risks by amending his application to request instead limited authority to operate only within the St. Louis Commercial Zone, SUF ¶ 96, whereupon the established moving firms withdrew their objections, and Munie was granted the more limited Certificate.  SUF ¶ 96.  Today, Munie is legally prohibited from operating a moving company statewide, or outside the Commercial Zone of St. Louis, unless he again submits an MO-1 application and again submits to the Competitor's Veto Procedure.  SUF ¶ 97.

**IV**

**THE UNCONTROVERTED FACTS SHOW
THAT THE COMPETITOR'S VETO PROCEDURE
RESTRICTS MUNIE'S CONSTITUTIONALLY PROTECTED
LIBERTY FOR NO LEGITIMATE PUBLIC REASON**

**A.   Munie Has a Constitutional Right to Earn a Living Free of Restrictions
That Bear No Rational Relationship to a Legitimate Public Interest**

A person's right to engage in a common trade or occupation has "long been recognized as . . . protected by due process." *Kwoun v. Se. Mo. Prof'l Standards Review Org.*, 622 F. Supp. 520, 530 (E.D. Mo. 1985).  States have broad discretion to regulate businesses and to impose licensing and testing requirements on persons engaged in trades, but such conditions must be rationally related to a legitimate public interest. *Merrifield*, 547 F.3d at 992; *Craigmiles*, 312 F.3d at 224; *Brown v. Barry*, 710 F. Supp. 352, 356 (D.D.C. 1989).  The time-consuming, costly

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1  Competitor's Veto Procedure is unconstitutional because it imposes a severe burden on Munie's

2  ability to obtain a Certificate and engage in the moving trade in Missouri, without any rational

3  connection to a legitimate government interest.

4  **B.   The Competitor's Veto Procedure**

5  　　　To operate a household goods moving company in Missouri—except within a Commercial

6  Zone[4]—a person must hold a Certificate issued by the Division.  Mo. Rev. Stat. § 390.051; Mo.

7  Code Regs. tit. 7, § 265-10.015.   Missouri law establishes a three-prong test for granting a

8  Certificate:  (1) the applicant must be "fit, willing, and able" to perform the service requested;

9  (2) the proposed service must "serve a useful present or future public purpose"; and (3) if an

10  Intervention is filed, the Division must refer the matter for an administrative hearing, to determine

11  whether or not the proposed service will be "inconsistent with the public convenience and

12  necessity."  *See* Mo. Rev. Stat § 390.051(4).  The statute explicitly requires that the hearing officer[5]

13  consider whether a new moving company will cause "[d]iversion of revenue or traffic from existing

14  carriers."

15  　　　Any person who seeks a Certificate must submit an MO-1 Application to the Division.

16  SUF ¶ 7.  When the Division receives an MO-1 Application, it first ensures that the application is

17  complete and accurate.  SUF ¶¶ 8-10.  It then determines whether the applicant is "fit, willing, and

18  able" to operate the proposed moving service.  SUF ¶¶ 11-12.  The "fit, willing, and able" analysis

19  evaluates whether the applicant is in compliance with safety standards, insurance requirements, and

20  other public welfare considerations.  SUF ¶ 12.

21  　　　Second, the Division notifies existing moving companies of the application by publishing

22  a notice in the *Notice Register*.  Mo. Code Regs. tit. 7, § 265-10.015(7)(A); SUF ¶ 28.  Within

23  15 days of this publication, interested parties may file an Intervention.  *See* Mo. Rev. Stat.

24  

_____

25  [4] A Certificate is not required to operate a moving company wholly within a Commercial Zone.
   Mo. Rev. Stat. § 390.030(1)(8) and (10).

26  

27  [5] Mo. Rev. Stat. § 390.051(5) requires the Division to make this decision, but under Mo. Code
   Regs. tit. 7, § 265-10.015(7)(A), the Division has delegated the process of holding the hearing to
   the AHC.  The Division invariably implements the AHC's decision as to whether an applicant is

28  entitled to a Certificate.  SUF ¶ 44.

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

§ 390.062(1); SUF ¶ 29.  If no Interventions are filed, the Division proceeds to determine whether the proposed moving service would "serve a useful present or future public purpose."  Mo. Rev. Stat. § 390.051(4); SUF ¶ 30.  If one or more Interventions *are* filed, the Division forwards the Application to the AHC to convene a hearing.  SUF ¶ 39.  At this hearing, the AHC determines both whether the proposed service would "serve a useful present or future public purpose" and whether the proposed service is "inconsistent with public convenience and necessity."  Mo. Rev. Stat. § 390.051(4); SUF ¶ 40.  As part of this analysis, the Division, or the AHC to whom it has delegated this task, must consider whether granting a new Certificate would cause "the diversion of revenue or traffic from existing carriers," Mo. Rev. Stat. § 390.051(5)—*i.e.*, whether the new firm would compete economically against existing firms.

The phrase "public convenience and necessity" is not defined in any Missouri statute or regulation.  However, Mo. Rev. Stat. § 390.051(5) requires the decisionmaker to consider the "diversion of traffic or revenue" from existing firms, and the AHC has ruled that the "public convenience and necessity" standard prohibits the "diversion of traffic" from existing moving companies.  *See In re D. Gaines* (No. 05-0227 MC) (Sandefur Dec. Exhibit 177).  Even where no allegation is made that an MO-1 applicant would endanger the public health, safety, or welfare in any way, an application for a Certificate may be denied solely on the grounds that a new service would compete with an existing company, as occurred in *In re Gaines*, described below.  SUF ¶¶ 48-53.

## C.  How the Competitor's Veto Procedure Works in Practice

Since 2005, there have been sixteen MO-1 applications against which one or more Interventions have been filed.  SUF ¶ 59.  All of these Interventions were filed by existing moving companies—SUF ¶¶ 60, 103—and in every instance, the Intervention stated as the basis for intervention that granting a new Certificate would cause "diversion of traffic or revenue"—*i.e.*, competition with the intervening moving company.  SUF ¶¶ 61, 103.  In no such case has an Intervenor asserted that granting the Certificate would cause a danger to public health, safety, or welfare, or provided the Division with any facts suggesting that the applicant was a threat to public health, safety, or welfare.  SUF ¶¶ 35-38, 103, 108.

Going through a hearing is a severe burden.  First, it imposes significant delays; it often takes months between an Intervention and a hearing, and it can often take months for the AHC to issue a decision at the end of the hearing.  Second, a hearing can be expensive, especially because corporations like Plaintiff ABC Quality Moving are legally required to be represented by a licensed attorney.  *See* Mo. Code Regs. tit. 1, § 15-3.250(3).  Third, even if there is no indication that a proposed moving service poses any public health, safety, or welfare concern, an applicant can be denied a Certificate if the hearing officer concludes that the proposed service will compete with existing firms.  SUF ¶ 42.

It is therefore no surprise that in all but three cases between 2005 and 2011 in which Interventions were filed, the applicants against whom Interventions were filed chose not to go through the hearing process, but instead chose to restrictively amend their applications to request a more limited geographic area of operation.  SUF ¶ 45.  And in each case in which the applicant did amend his or her application to request a narrower range of operations, the Intervenors withdrew their objections, and the Division issued the Certificate.  SUF ¶ 45.  Meanwhile, whenever an applicant sought a narrow range of operations, no Interventions were filed.  SUF ¶¶ 64-71.

Any and all MO-1 applications for Certificates are subject to the Competitor's Veto Procedure.  Thus, there is no way Munie can obtain legal authorization to operate a moving business throughout Missouri without submitting an application that is subject to Intervention by existing moving companies.

**D.  Examples of Competitor's Vetoes**

A handful of examples illustrate how the Competitor's Veto Procedure works in practice.  Bill G. Holloway, Jr., sought a Certificate in 2010 which would have allowed him to operate a moving company within a 75-mile radius of Salem, Missouri.  SUF ¶ 73.  When a notice of his application was published in the *Notice Register*, three existing moving companies filed Interventions, alleging as their sole ground that the issuance of a Certificate would cause "diversion of traffic"—*i.e.*, economic competition.  SUF ¶¶ 75-76.  No Intervenor claimed that Holloway's proposed service was a threat to public health, safety, general welfare, or any legitimate

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

government interest. SUF ¶ 75. The Division scheduled Holloway's application for a hearing with the AHC. SUF ¶ 76. When his attorney advised him that existing firms would not allow him to compete against them, Holloway restrictively amended his application to instead seek authority to operate only within a 50-mile radius of Salem. SUF ¶ 77. In consequence, the Intervenors withdrew their Interventions, and Holloway's Certificate was granted. SUF ¶ 78.

As noted above, Plaintiff Munie filed an MO-1 Application in 2009, seeking authority to operate within a 125-mile radius of St. Louis. SUF ¶ 89. The Division published a notice in the *Notice Register*, and four Interventions were received, SUF ¶¶ 89-90, none of which asserted that Munie's proposed service was a threat to public health, safety, or welfare, or that Munie was incompetent, dangerous, or unskilled. SUF ¶ 910. The sole basis for these Interventions was that issuing Munie the requested Certificate would cause "diversion of traffic" from the existing moving companies that intervened. SUF ¶ 90. Realizing that going through the hearing procedure would be expensive and time consuming, SUF ¶ 93, Munie amended his application to request only service within the Commercial Zone of St. Louis. SUF ¶ 94. The Intervenors then withdrew their objections, and the Division issued Munie a Certificate. SUF ¶¶ 96-97.

In 2005, D. Gaines Inc. (dba Gaines Moving & Delivery), filed an MO-1 application seeking authority to operate a moving company throughout the State of Missouri. SUF ¶ 49. Interventions were filed by seven moving companies. SUF ¶ 50. All of these Intervenors stated as the sole basis for their intervention that Gaines' proposed service would cause "diversion of traffic" from their operations—in other words, that some customers would hire Gaines instead of them, if given the choice. SUF ¶ 50; Deposition of Barbara Hague (Hague Depo.) at 21:11-23, attached to Sandefur Dec. as Exhibit 6. No Intervenor claimed that the proposed service would be a threat to the public health, safety, or welfare, or provided any facts or other information suggesting that Gaines' MO-1 application raised any public health, safety, or welfare concerns. SUF ¶ 50.

The Division referred Gaines' application to the AHC for a hearing. SUF ¶ 51. Gaines did *not* restrictively amend his application, but continued to request authority to operate statewide. At the conclusion of the hearing, the hearing commissioner issued a decision which acknowledged that

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1    Gaines was fully qualified and had the legally required insurance.  SUF ¶ 52.  *See In re Gaines*

2    (No. 05-0227 MC), Sandefur Dec. Ex. 177.  Nevertheless, the commissioner concluded that Gaines

3    was not entitled to a Certificate because if he were to operate throughout the state, he would cause

4    "diversion of traffic" from—*i.e.*, would compete with—existing moving companies.  SUF ¶ 52.

5    The Division thereupon denied Gaines a Certificate, *solely because he would have competed*

6    *against existing firms*.  SUF ¶¶ 52-53.

7        Three years later, Gaines filed another MO-1 Application, again seeking authority to operate

8    throughout the State of Missouri.  SUF ¶ 54.  Five moving companies filed Interventions.  SUF

9    ¶ 55.  Again, the Intervenors made no allegation that Gaines' operations were a threat to public

10   health and safety, but argued only that he would compete economically against them.  SUF ¶ 55.

11   The Division again referred the case to the AHC, SUF ¶ 56, but this time, Gaines chose to

12   restrictively amend his application to request only authority to operate within a 45-mile radius of

13   Columbia. SUF ¶ 57.  In response to this amendment, the Intervenors withdrew their Interventions,

14   and the hearing was cancelled.  SUF ¶ 58.

15       This pattern is repeated throughout every MO-1 application in the past half-decade.  When

16   Golden Valley Movers applied for authority to operate throughout the State of Missouri, the

17   Division published a notice in the *Notice Register*, SUF ¶ 79; nine Interventions were filed by

18   existing moving firms, SUF ¶ 79; the Division referred the application to the AHC, SUF ¶ 79;

19   Golden Valley restrictively amended its application to only request authority to operate in Johnson,

20   Pettis, Henry, Benton, and St. Clair Counties, SUF ¶ 80, and the intervening companies withdrew

21   their Interventions "based upon the amendment of Applicant's request of authority to service to,

22   from, and between [these] points."  SUF ¶ 81.  When Langmart Corporation (dba J&B Moving)

23   applied for authority to operate statewide, SUF ¶ 82, ten existing moving companies filed

24   Interventions, SUF ¶ 83, and the Division referred the application to the AHC.  SUF ¶ 83.

25   Langmart then amended its application to request only authority to operate within a 75-mile radius

26   of St. Clair, Union, and Washington, Missouri, but not between Rolla, Missouri, and its

27   Commercial Zone, or from the St. Louis Commercial Zone and St. Clair, Union, and Washington,

28   Missouri.  SUF ¶ 84.  The intervening companies thereupon stated that their "interests [were]

satisfied," and withdrew their Interventions.  SUF ¶ 85.  When A Friend With A Truck Movers, LLC, sought authority to operate statewide, SUF ¶ 86, objections were filed by four existing moving companies, SUF ¶ 87, and the Division referred the application to the AHC.  SUF ¶ 87. But when A Friend With A Truck Movers agreed to restrict the scope of its requested authority to operate only within the Kansas City Commercial Zone, the Intervenors were "satisf[ied]" and withdrew their objections.  SUF ¶ 88.

By contrast, whenever applicants have sought only narrowly limited geographic authority, their certificates have not been subjected to Interventions at all.  SUF ¶¶ 62-71.  For example, James A. Lowhorn (dba Handyman Movers) only sought authority to operate within a 25-mile radius of Columbia, and his application was not subjected to Interventions.  SUF ¶ 98.  A. Frisella Moving & Storage Services sought authority to operate only within the St. Louis Commercial Zone, and its application was not subject to any Interventions.  SUF ¶ 99.  B&L Moving Company, Inc., sought authority to operate only in the St. Louis Commercial Zone, and no Interventions were filed.  SUF ¶ 100.

In sum, whenever a person seeks authority to operate statewide or otherwise compete with the established firms, their MO-1 applications are subject to an Intervention process whereby the established firms, with no obligation to allege any facts relating to public health, safety, or welfare, can trigger a burdensome, costly, time-consuming hearing procedure.  Under that hearing, a newcomer can be, and likely will be, barred from operating solely because allowing the applicant to operate a moving company would allow customers to obtain moving services from the applicant, rather than the established firms.  Meanwhile, applicants who only request narrow authority, or authority to operate in isolated or small communities so that they will not compete against existing firms, are not subject to any Interventions, and the Division issues that applicant a Certificate. Newcomer firms quickly learn that to get a Certificate, it is best not to seek authority to operate statewide or beyond tightly restricted boundaries, and they amend their applications to avoid Interventions.  The only newcomer who did not abide by this rule, D. Gaines, was refused a Certificate even though he was *fully qualified and insured*.  Thus the Competitor's Veto Procedure

///

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1  operates solely to bar new moving companies from entering the statewide market to compete with

2  the privileged, established firms.

3                                              **V**

4                        **THE COMPETITOR'S VETO PROCEDURE**
                        **DOES NOT RATIONALLY RELATE TO**
5                        **A LEGITIMATE GOVERNMENT INTEREST, BUT**
                        **MERELY PROTECTS ESTABLISHED MOVING FIRMS**
6                        **AGAINST LEGITIMATE COMPETITION, THUS VIOLATING**
                        **THE DUE PROCESS AND EQUAL PROTECTION CLAUSES**

7  **A.   The Competitor's Veto Procedure Serves**
8      **No Public Health, Safety, or Welfare Purpose**

9         Allowing existing moving companies to object to the issuance of a Certificate so as to

10  preserve their market share against potential competition does not protect public health, safety, or

11  welfare. *See New State Ice Co. v. Liebmann*, 285 U.S. 262, 278-79 (1932); *Craigmiles*, 312 F.3d

12  at 229.  Intervenors are not required to offer any facts or opinions about an applicant's safety

13  record, or the possible public health effects or general public welfare effects of granting a new

14  Certificate, in order to invoke the hearing requirement.  SUF ¶ 31.  Indeed, *in no case in the past*

15  *five years has any Intervenor ever provided the Division with information about an applicant*

16  *relating to public health or safety*, SUF ¶ 35, or any information about the applicant's accident or

17  consumer complaint record.  SUF ¶ 36.  Defendants do not allege that allowing existing companies

18  to file Interventions promotes economical or efficient transportation, or the productive use of

19  equipment and energy, or enhances the reputation of Missouri's household goods moving industry

20  by preventing unskillful or unknowledgeable persons from entering the profession.  SUF ¶¶ 110-

21  112.  Longtime Division employee Barbara Hague testified that she was aware of no case in which

22  an Intervenor had provided information to the Division regarding public health, safety, or welfare,

23  which might aid the Division in protecting the general public.  SUF ¶ 114.  Although she knew of

24  cases in which applicants of dubious reputation had been prevented from going into business, she

25  testified that the Division accomplished this through "the public safety aspects of our reviews," and

26  *not* through the Intervention process. *Id.*; Hague Depo. at 35:11-24.  She also testified that she was

27  not aware of any case in which the AHC refused an application for a Certificate for public safety

28  reasons.  SUF ¶ 47.

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

There simply is *no relationship* between protecting the public from dangerous, incompetent, unfair, or inefficient competition, and the Intervention and hearing procedure.  Those considerations fall entirely within the "fit, willing, and able" review applied to all MO-1 applications.  The Competitor's Veto Procedure, by contrast, does not prevent incompetent, dangerous, or inefficient businesses from operating, or ensure that moving company operators are well trained, have a good public safety record, or that they are not engaged in unsafe or criminal activities.

Nor does the Competitor's Veto Procedure relate to any other public welfare goal.  The statute's purpose section states that the law exists "[t]o promote safe, adequate, economical and efficient transportation; [t]o promote the most productive use of equipment and energy resources; and [t]o conserve the interests and convenience of the public."  Mo. Rev. Stat. § 390.011.  But Defendants concede that allowing existing firms to intervene and impose a costly and time-consuming hearing requirement on any potential new firm that might "diver[t] . . . traffic or revenue" from established firms does not advance any of these goals.  SUF ¶¶ 104-113.  The Division acknowledges that allowing existing businesses to intervene and object to the issuance of a Certificate does not advance the interests and convenience of the public, SUF ¶ 104, or promote safe or adequate or economical or efficient transportation, SUF ¶ 110.  Nor is there any basis for thinking that it would, since Intervenors are not required to provide evidence or opinions regarding safety, adequacy, economy, efficiency, productivity, or any other of these factors when invoking the hearing requirement, SUF ¶ 31, and there is no evidence that any Intervenor ever has done so.  SUF ¶¶ 35-38, 108, 113.  Instead, Intervenors regularly assert as their *sole* ground for intervention that allowing a new firm to engage in the moving business would cause competition against them.  SUF ¶ 103.  In the cases of Bill Holloway, D. Gaines, and Michael Munie, Intervenors made *no allegations* that the applicants operated dangerous, irresponsible, or otherwise improper businesses, but argued solely that allowing competition would "divert traffic" from the Intervenors by increasing the choices open to consumers who need moving services.  SUF ¶¶ 76, 50, 90.

*///*

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1    On the contrary, as Munie's expert witness Dr. Adrian Moore testifies, the Competitor's

2    Veto Procedure restricts competition, raises prices, limits choices for consumers, and tends to

3    reduce service quality.  SUF ¶¶ 116, 119.  Existing moving firms, given the opportunity to prevent

4    newcomers from entering the market, will tend to exploit the licensing mechanism for private

5    benefit:  "Their self interest will color their comments on the state of the market as well as the

6    competence and security of potential entrants."  Declaration of Adrian Moore ¶ 10.  The record

7    unequivocally demonstrates the reality of this phenomenon.  Limiting competition so as to prevent

8    "diversion of traffic" from incumbent firms reduces the competitive pressures that contain prices

9    and keep the moving industry dynamic.  SUF ¶ 120.  As Dr. Moore testifies, the Competitor's Veto

10   Procedure is anticompetitive, harms consumers, and serves no public interest in consumer

11   protection or fair competition.  SUF ¶ 123.

12   **B.  The Challenged Statutes and Regulations Are Not Rationally**
     **Related to Any Other Legitimate Government Interest**

13

14   Although the State concedes that the Competitor's Veto Procedure is not related to

15   protecting public health, safety or welfare, this Court is also required to consider whether the

16   procedure is rationally related to any other legitimate government purpose.  *Prostrollo v. Univ. of*

17   *South Dakota*, 507 F.2d 775, 779 (8th Cir. 1974).  It is not.

18   In *Stanley v. Pub. Utils. Comm'n*, 295 U.S. 76, 78 (1935) (per curiam), the Supreme Court

19   upheld a law requiring moving businesses to obtain a Certificate of Public Convenience and

20   Necessity, on the grounds that such a requirement preserved the public roads from deterioration

21   that might be caused by too many moving vans operating on the public roads.  But the Division

22   does not consider the volume of vehicular traffic on state highways when reviewing an application

23   for a Certificate.  SUF ¶ 26.  Intervenors are not required to specify any facts or opinions relating

24   to preservation of public roads in order to invoke the hearing requirement.  SUF ¶ 31.  Neither the

25   statute nor the regulations make any mention of the condition of public roads, nor is there any case

26   in which an Intervention resulted in any consideration of highway conditions.  This case more

27   resembles *Buck v. Kuykendall*, 267 U.S. 307, 315-16 (1925), in which the Court found that a

28   Certificate of Public Convenience and Necessity requirement did not operate

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

with a view to safety or to conservation of the highways, but the prohibition of competition. It determines not the manner of use, but the persons by whom the highways may be used. It prohibits such use to some persons while permitting it to others for the same purpose and in the same manner.

Nor does the Competitor's Veto procedure promote economic policies. The Division does not consider employment rates in the moving industry when making its determinations. SUF ¶ 22. No Intervenor in the past five years has provided the Division with information about monopolization in the industry, SUF ¶ 37, nor are Intervenors required to provide any facts or opinions relating to monopolization or other general economic factors in order to invoke the hearing requirement. SUF ¶ 31. The Procedure does not prevent ruinous competition or monopolization in the moving industry. SUF ¶ 107. On the contrary, as Munie's expert witness explains, the protectionist barrier established by the Competitor's Veto requirement *causes* monopolistic conditions and *prevents* competition. SUF ¶¶ 116-119. By contrast, there is no empirical evidence of competition leading to inadequate services. SUF ¶ 121. Neither the statute nor the regulations make reference to monopolistic conditions, nor is there any case in which an Intervention resulted in any consideration of potential monopolization in the moving industry.

In addition, the Division does not claim that requiring an applicant to prove that his or her proposed service will "serve a useful present or future public purpose" protects the public health or safety, SUF ¶¶ 23-24, or ensure that consumers are able to select a reputable household goods mover, SUF ¶ 112, or prevent incompetent movers from causing injuries to members of the general public, SUF ¶ 125, or protect consumers from fraud or the breaking of personal items. SUF ¶ 25. Nor does the challenged law promote the productive use of equipment and energy. SUF ¶ 111. Intervenors are not required to provide any facts or opinions regarding energy efficiency or productivity, and there is no indication in the record that an Intervention has ever resulted in any consideration of these matters.

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

**C.  The Competitor's Veto Procedure Violates the Equal Protection Clause by Protecting the Private Interests of Existing Companies Against Legitimate Competition and Arbitrarily Restricting Moving Companies but Not Similarly Situated Firms**

Given the overwhelming evidence that the Competitor's Veto Procedure does not advance any legitimate government interest, the Court should turn to the second step in the inquiry:  whether the statute simply protects existing firms against legitimate competition.  *See Craigmiles*, 312 F.3d at 228; *Merrifield*, 547 F.3d at 991.  The evidence here is equally overwhelming.

Mo. Rev. Stat. § 390.051(5) explicitly requires the Division, once an Intervention is filed, to evaluate whether issuing a Certificate will cause "diversion" of "revenue" from existing firms—*i.e.*, whether it would encourage competition—and in *In re D. Gaines*, the only case on record in which an applicant refused to "restrictively amend" his application to avoid competing with existing firms, the Certificate was denied on the grounds that it would have allowed competition.  SUF ¶¶ 48, 50, 52-53.

Long-time Division employee Barbara Hague testified that "diversion of traffic or revenue" means "that [the requested] certificate would authorize a service in portions of the territory [in] which . . . [the] interven[ors] . . . presently provide service pursuant to their certificate . . . . [I]t means that some of their business would be diverted to other motor carriers."  Hague Depo. at 17:12-22 (Sandefur Dec. Ex. 5).  She further testified that "[d]iversion of revenue or traffic" means that the applicant "would take some of the movements away from the existing carriers authorized to operate in that territory."  *Id.* at 21:13-16.  Asked to clarify, she testified that this meant new competitors would "[t]ake some of [the Intervenors'] business away from them."  *Id.* at 21:19.

*Q:*  So customers would go with a new service instead of the existing service?

*Hague:*  Yes, it's a possibility that's what that means.

*Q:*  Okay. Is there—

*Hague:*  Diverting traffic, diverting movements, diverting revenue.

*Q:*  Is it possible that that language means anything else?

///

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

*Hague:* I don't know.  I am not an administrative hearing commissioner nor a lawyer, so I'm not sure whether it means something else or not.

*Id.* at 21:21-22:6.

Mo. Rev. Stat. § 390.051 and its implementing regulations are explicitly designed to empower established moving companies to bar newcomers from entering the industry—not to protect the public in any way—but to protect the private interests of established companies who do not want customers to hire other firms.

The Competitor's Veto Procedure only serves to prevent legitimate competition against established firms.  Of more than 106 Interventions filed against MO-1 applicants between 2005 and 2011, *all* were filed by existing moving companies.  SUF ¶¶ 101-102.  In *every* instance, existing firms cited as the sole basis for their intervention that allowing a new moving company would cause "diversion of traffic or revenue" from their existing operations.  SUF ¶ 103.  In *no* case has any Intervenor cited a public health, safety, or welfare concern as the basis for intervention.  As described above, in all but three contested cases,[6] Intervenors dropped their objections as soon as the applicant "restrictively amended" his or her application in a way that would ensure that the applicant would not compete against existing firms.  SUF ¶ 45.  The only exceptions were Kwik Movers, which appears never to have received a Certificate; Servant Enterprises, which, after Interventions were filed, chose to purchase an existing moving company and take over its existing

---

[6] During the same period (since 2005) 59 Certificate applications were filed in which no Interventions were received.  SUF ¶¶ 62-71, and note 1.  In all of these, the applicant either sought authority to operate within a narrow geographic area, or to transfer a pre-existing statewide Certificate.  Specifically, six such applicants asked for authority to operate only within a 50-mile radius of a municipality, SUF ¶ 65; three asked to operate within 125-miles of Kansas City, SUF ¶ 66; two asked for authority to operate within 125-miles of St. Joseph, SUF ¶ 67; one asked for authority to operate within a 125-mile radius of Pevely, SUF ¶ 69; one asked for authority to operate within a 75-mile radius of Joplin, SUF ¶ 70; one asked for authority to operate within a 150-mile radius each of St. Louis and Kansas City, SUF ¶ 71; and one asked only to transfer existing statewide authority, SUF ¶ 68.  In one case, statewide authority was accidentally issued without a notice being published in the *Notice Register*, and was rescinded when the error was discovered; the applicant thereupon sought only authority to operate in the Kansas City Commercial Zone.  SUF at p. 8 n.1.  The remaining 44 uncontested MO-1 applications sought authority to operate only within a Commercial Zone, SUF ¶ 64.  Commercial Zone applications are exempt from the Competitor's Veto Procedure under Mo. Rev. Stat. § 390.030.1(8) and (10).  The conclusion is clear:  only applicants who seek geographically limited authority—and thus pose no significant threat of competition with the privileged, established firms already holding authority—can hope to avoid a costly, time-consuming Competitor's Veto.

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1  statewide operating authority; and *In re D. Gaines, Inc.* (No. 05-0227 MC).  SUF ¶ 46.  In the

2  *Gaines* case, as described above, the applicant was refused a Certificate, despite being fully

3  qualified and insured, because granting the Certificate would cause "diversion of traffic or revenue"

4  from existing firms.  *See* SUF ¶ 50.

5      The leading scholarly analysis of this law concluded that it "facilitates cartelization of the

6  motor carrier industry and reduces the competitive discipline which encourages efficient low cost

7  service," and concluded that it is "unsupported by any defensible conception of the public interest."

8  Paul H. Gardner, Jr., *Entry and Rate Regulation of Interstate Motor Carriers in Missouri:  A

9  Strategy for Reform*, 47 Mo. L. Rev. 693, 742-43 (1982).  The evidence demonstrates that this is

10  precisely how the Competitor's Veto works.

11      The Competitor's Veto Procedure violates the Due Process Clause because it deprives

12  Munie and ABC Quality Moving of a constitutionally protected liberty—the right to engage in a

13  lawful occupation—without undergoing a biased and arbitrary procedure that lacks any reasonable

14  connection to a legitimate public interest.  It also violates the Equal Protection Clause because it

15  gives established moving companies an unconstitutionally arbitrary privilege to prevent legitimate

16  competition with them.  The Plaintiffs are entitled to summary judgment on the First and Second

17  Causes of Action stated in their Complaint.

18      Plaintiffs are also entitled to summary judgment on the Third Cause of Action stated in their

19  Complaint:  just as the Competitor's Veto Procedure lacks any relationship to a legitimate state

20  interest, it is also unconstitutional for that procedure to be applied to moving companies but not

21  to similarly situated industries like limousine or taxi companies.  Mo. Rev. Stat. § 390.030.1(2)

22  specifically exempts taxicabs, and other subsections of Section 390.030.1 exempt other motor

23  carriers.  Yet for the reasons identified above, the Competitor's Veto Procedure does not rationally

24  relate to any public health, safety, or welfare purpose.  Thus, there is no rational basis for applying

25  that procedure to movers of household goods, but not to persons who transport passengers.

26  ///

27  ///

28  ///

## VI

### THE "USEFUL PUBLIC PURPOSE" AND "PUBLIC CONVENIENCE AND NECESSITY" STANDARDS IN SECTION 390.051 ARE UNCONSTITUTIONALLY VAGUE

A licensing statute that vests officials with unbridled discretion whether to grant or withhold the license is unconstitutional. *Yick Wo v. Hopkins*, 118 U.S. 356, 366-67 (1886); *2302 N. Truman Entm't Mgmt., LLC v. City of Pevely*, No. 4:11CV171, 2011 U.S. Dist. LEXIS 138700, at **16-17 (E.D. Mo. Dec. 2, 2011). Unbridled discretion exists where statutory factors are not defined, or where the statute provides no specific standards or guidelines upon which enforcement officials are to base their decisions, *see Geiger v. City of Eagan*, 618 F.2d 26, 29 (8th Cir. 1980), and where no time limit is provided limiting official decisionmaking. *Int'l Soc'y for Krishna Consciousness, Inc. v. Engelhardt*, 425 F. Supp. 176, 180 (W.D. Mo. 1977). In such circumstances, the statute is unconstitutionally vague because "men of common intelligence must necessarily guess at its meaning and differ as to its application." *Geiger*, 618 F.2d at 28.

Mo. Rev. Stat. § 390.051(4) imposes two unconstitutionally vague standards on people who apply for Certificates to operate moving companies: first, the applicant must prove that the proposed company would "serve a useful present or future public purpose," and second, if an Intervention is filed, the application will be denied if the proposed service will be "inconsistent with the public convenience and necessity."

### A. "Useful Present or Future Public Purpose"

Under Mo. Rev. Stat. § 390.051, every MO-1 applicant bears the burden of proving to the Division's satisfaction that the proposed moving service will "serve a useful present or future public service." This provision is unconstitutionally vague. The phrase "useful present or future public purpose" is not defined in any statute, regulation, or case law in Missouri; indeed, the phrase does not appear in any *other* state or federal statutes or court decisions. Nor does any statute, regulation, case law, or other document provide guidance to officials in making such a determination. The Division's *Registration Section Procedures Manual* (2002), attached as Exhibit 253 to Sandefur Dec., contains no definitions or guidelines or factors for making this determination. Nor do the words "useful present or future public purpose" have "a common

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

understanding developed at law," *Geiger*, 618 F.2d at 29, or a common dictionary definition that would be applicable in a principled, predictable, or objective way by a regulatory agency. *See*, *e.g.*, *Merriam-Webster's Collegiate Dictionary* 1297 (10th ed. 2001) ("capable of being put to use . . . serviceable for an end or purpose . . . of a valuable or productive kind."). No statute, regulation, or office handbook provides guidelines, examples, standards, or factors for determining whether a proposed moving service is, or will be, "useful."

The statute is therefore far more vague than the ordinance that was found unconstitutionally vague in *Geiger*. There, the ordinance at least enumerated the characteristics of the prohibited items, although these characteristics were presented as alternatives rather than as a cumulative definition; nevertheless, the statute was found unconstitutionally vague. *See* 618 F.2d at 29. Likewise, in *Magnani v. City of Ames, Iowa*, 493 F. Supp. 1003 (S.D. Iowa 1980), the court found an ordinance banning drug paraphernalia unconstitutionally vague even though that ordinance included a definition section, because it was unclear when a pipe or spoon was small enough to be covered by the ordinance. *Id.* at 1006. The court noted that different police officers interpreted the statute differently, and that the ordinance did not give an ordinary person sufficient notice of what was prohibited. *Id.* But the vagueness in this case is far worse, because the statute does not define any of the relevant terms, and does not list any characteristics of "usefulness," or of "future usefulness." In short, Mo. Rev. Stat. § 390.051 does not provide notice to an ordinary person—or to an expert—as to what is meant by "usefulness," what types of moving services are not "useful" or will not be useful in the "future." "[M]en of common intelligence would have to guess at [the] meaning" of this statutory provision. *Gallagher v. City of Clayton*, No. 4:11-CV-392, 2011 U.S. Dist. LEXIS 141828, at *21 (E.D. Mo. Dec. 9, 2011).

Although no regulation or statute authorizes them to do so, the Division's current policy is to make the "useful present or future public purpose" determination by asking the applicant to submit "statements of support" from potential customers. SUF ¶ 44. These consist of letters from potential customers, or a form filled out by potential customers, in which the prospective customer asserts that he or she would hire the applicant if the Division were to grant the MO-1 application. But the Division does not investigate the truthfulness of any assertions or claims in these

statements, and these statements are not required to be notarized or sworn.  SUF ¶¶ 18-19.  No

specific number of these statements is required, SUF ¶ 20, and the Division does not give any

greater weight to some statements over others, or consider the reputation of the person submitting

the statement.  SUF ¶ 21.  Nor does the Division specify any relationship between the proposed

geographic area of operation and the number or quality of "statements of support" required.  As

witness Hague testified,

> we look at the territory of which they're requesting authority for and look at the
> width and breadth of it and what they have provided and whether indeed we feel
> that there is sufficient numbers to support this territory they're requesting . . . .  You
> may only need a couple [statements of support] because [the requested operating
> authority] is very small in scope, but as that becomes broader, you want to make
> sure that you have support that will in essence support the territory which they're
> applying for.

> *Q:*  But there's no hard and fast rule of how many is necessary?

> *Hague:*  No, there is not.

Hague Depo. at 11:18-12:5.  The statements need not be based on genuine facts, or supported by

oath or affirmation; nor are statements of support from reputable consumers accorded greater

weight than statements from nonreputable ones.  SUF ¶ 21.  And because there are no guidelines

or standards by which to relate these statements to an applicant's requested geographic area of

operation, it is not clear whether a single such statement suffices to demonstrate a "useful future

purpose" for a proposed area of operation, or whether multiple statements are required, or whether

a statement that suggests a possible *future* need for moving services in an area would suffice,

*et cetera*.

Notwithstanding the lack of any statutory or regulatory basis or guidelines for doing so, the

Division relies *solely* on these statements when making its determination regarding "useful present

or future public purpose."  SUF ¶¶ 16-18.  It conducts no market research, and does not evaluate

prices, employment, customer satisfaction with existing services, or any other factors.  Thus, the

Division makes the decision whether the statements of support submitted by an applicant suffice

to demonstrate a "useful present or future public purpose" subjectively, according to no reasoned

or accessible standard that prevents arbitrary or discriminatory enforcement.   This is

unconstitutionally vague, as it does not give applicants reasonably comprehensible guidance as to

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1  what constitutes a "useful" present or future public purpose, and does not cabin the discretion of

2  Division staff. *Cf. Yick Wo*, 118 U.S. at 366-67 (invalidating licensing ordinance that gave officials

3  no "guidance or restraint").

4  **B.   "Public Convenience and Necessity"**

5        Missouri also has no statute, regulation, or other standard defining the term "public

6  convenience and necessity." Nor is the Division aware of any definition of these terms. Asked

7  what the term means, Defendant Jan Skouby said that it is synonymous with "present or future

8  public purpose," Skouby Depo (Sandefur Dec. Ex. 4) at 11:15-13:3, but the statute makes clear that

9  they are actually separate terms. When asked in written interrogatories how the term is defined,

10  Defendants identified only one source:  the Court of Appeals decision in *State ex rel. Potashnick*

11  *Truck Serv., Inc. v. Pub. Serv. Comm'n*, 129 S.W.2d 69 (Mo. Ct. App. 1939).  *See* Defendants'

12  Response to Plaintiffs' Interrogatories, Set One, No. 15 (Sandefur Dec. Ex. 1).  But that case

13  contains no definition of the term "public convenience and necessity"; on the contrary, that case

14  simply quoted from a now-repealed 1931 statute—not the statute challenged here—which stated

15  that a Commission making a finding of public convenience and necessity

16        shall *give reasonable consideration* to the transportation service being furnished by
       any railroad, street railroad or motor carrier, and shall give due consideration to the
17       likelihood of the proposed service being permanent and continuous throughout
       twelve months of the year, and the effect which such proposed transportation
18       service may have upon other transportation service being rendered.

19  129 S.W.2d at 73 (emphasis added). What "reasonable consideration" and "due consideration"

20  mean, however, was not explained either in *Potashnick* or in any subsequent case or regulation.

21  In any event, *Potashnick* is no longer applicable. *See State ex rel. Holland Indus., Inc. v. Div. of*

22  *Transp.*, 762 S.W.2d 48, 50 (Mo. Ct. App. 1988) (noting change in Missouri statutes governing

23  moving companies).  Nor does the AHC rely on *Potashnick* in making its decisions.  On the

24  contrary, in *In re D. Gaines, Inc.* (No. 05-0227 MC) (Sandefur Dec. Exhibit 177), the only decision

25  in the record in which the AHC addressed the meaning of "public convenience and necessity," the

26  AHC did not cite that decision or any statute or regulation defining the term.

27  ///

28  ///

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1    Indeed, in the *Gaines* decision,[7] the Commissioner, after observing the paucity of guidance

2    for implementing the Competitor's Veto Procedure, wrote that public convenience and necessity

3    "means that an additional service would be an improvement that justifies the cost," *id.* at 10 (citing

4    *State ex rel. Intercon Gas, Inc. v. Pub. Serv. Comm'n*, 848 S.W.2d 593, 597 (Mo. Ct. App. 1993)).

5    But this is not what *Intercon Gas* said: that case—which also did not involve Mo. Rev. Stat.

6    § 390.051, but a different statute regulating natural gas pipelines—simply said that the word

7    "necessary" was not synonymous with "indispensable," but means that an improvement would

8    justify the cost. *See* 848 S.W.2d at 597. Moreover, *Intercon Gas* cited *State ex rel. Ozark Elec.*

9    *Coop. v. Pub. Serv. Comm'n*, 527 S.W.2d 390, 394 (Mo. Ct. App. 1975), in which the Court of

10   Appeals acknowledged that "[f]or some reason, either intentional or otherwise, the General

11   Assembly has not seen fit to statutorily spell out any specific criteria to aid in the determination of

12   what is 'necessary or convenient for the public service.' "

13   While some Missouri cases have articulated some of the factors to be weighed when

14   evaluating "public convenience and necessity" under other statutes, there are no precedents,

15   statutes, or regulations that declare what weight is to be assigned to each factor, whether they are

16   conjunctive or disjunctive or dispositive, or what sort of evidence or testimony is required to

17   establish each factor. Nor does Mo. Rev. Stat. § 390.051 or its implementing regulations provide

18   any time limit in which the MO-1 application must be granted or denied. In short, decision-makers

19   are given *no meaningful guidance* in evaluating contested MO-1 applications—they are only

20   instructed to "consider" certain factors. This is not "discretion in the legal sense of that term,

21   but . . . mere will. It is purely arbitrary and acknowledges neither guidance nor restraint." *Yick Wo*,

22   118 U.S. at 366-67. The Competitor's Veto statute is therefore unconstitutionally void for

23   vagueness, and Plaintiffs are entitled to summary judgment on the Fourth Cause of Action

24   identified in their Complaint.

25   ///

26

---

27   [7] Because decisions of the AHC are not precedential, *see*, *e.g.*, *Ovid Bell Press, Inc. v. Dir. of Revenue*, 45 S.W.3d 880, 886 (Mo. 2001), the *Gaines* decision does not contribute any useable

28   legal standards to guide in the determination of "public convenience and necessity" in future cases.

**CONCLUSION**

For all of the reasons discussed above, Plaintiffs respectfully request that this Court grant Plaintiffs' motion for summary judgment against Defendants on their First through Fourth Causes of Action; issue judgment declaring the Competitor's Veto Procedure established by Mo. Rev. Stat. § 390.051 and Mo. Code Regs. tit. 7, § 265-10.015 and the policies and practices whereby Defendants enforce these provisions, unconstitutional and unenforceable; and to permanently enjoin Defendants from enforcing the challenged statute and regulations.

DATED:  January 13, 2012.

Respectfully submitted,

M. REED HOPPER*
TIMOTHY SANDEFUR*
DANIEL A. HIMEBAUGH*
Pacific Legal Foundation

By _____/s/ Timothy Sandefur_____
TIMOTHY SANDEFUR, Cal Bar No. 224436*

Attorneys for Plaintiffs
MICHAEL MUNIE and
ABC QUALITY MOVING, LLC

Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone:  (916) 419-7111
Facsimile:  (916) 419-7747
E-mail:  tms@pacificlegal.org

*pro hac vice

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1

**CERTIFICATE OF SERVICE**

2       I hereby certify that on January 13, 2012, the foregoing was filed electronically with the

3   Clerk of the Court to be served by operation of the Court's electronic filing system upon the

4   following:

5                         ALICIA O'CONNELL
                               E-Mail:  alicia.o'connell@modot.mo.gov,

6                         Lori.Tackett@modot.mo.gov,
                        sheila.schulte@modot.mo.gov

7

8                         DANA W. TUCKER
                        E-Mail:  dana.tucker@ago.mo.gov,

9                         Sherry.Dawson@ago.mo.gov

10                       R. B. REGAN
                      E-Mail:  b.regan@modot.mo.gov
                      *Counsel for Defendants Skouby, et al.*

11

12                                          /s/ Timothy Sandefur

13                            TIMOTHY SANDEFUR, Cal Bar No. 224436*

14                         Attorney for Plaintiffs

15                         MICHAEL MUNIE and
                        ABC QUALITY MOVING, LLC

16                         Pacific Legal Foundation

17                         930 G Street
                        Sacramento, California 95814
                        Telephone:  (916) 419-7111

18                         Facsimile:  (916) 419-7747
                        E-mail:  tms@pacificlegal.org

19

20                         *pro hac vice

21

22

23

24

25

26

27

28

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747